**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MELISSA AUSTIN 151 S Mulberry Street Chillicothe, Ohio 45601, | ) ) ) ) | CASE NO. JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| CONSOLIDATED METCO INC. 351 Chamber Drive Chillicothe, Ohio 45601 | ) ) ) ) ) | **JURY DEMAND ENDORSED HEREIN** |
| **Serve Also:** Consolidated Metco, Inc. c/o CT Corporation System 4400 Easton Commons Way Suite 125 Columbus, Ohio 43219 | ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff, Melissa Austin, by and through undersigned counsel, as her Complaint against Defendant ConMet, states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1. Austin is a resident of the city of Chillicothe, Ross County, Ohio.

2. At all times herein, Austin was acting in the course and scope of her employment.

3. ConMet is a foreign corporation that does business at 351 Chamber Drive, Chillicothe, Ross County, Ohio 45601.

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Austin is alleging a Federal Law Claim under the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

5. All material events alleged in this Complaint occurred in Ross County, Ohio.

6. This Court has supplemental jurisdiction over Austin's state law claims pursuant to 28 U.S.C. § 1367 as Austin's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 300 days of the conduct alleged below, Austin filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00090 against ConMet ("Austin EEOC Charge").

9. On or about June 24, 2021, the EEOC issued a Notice of Right to Sue letter to Austin regarding the Charges of Discrimination brought by Austin against ConMet in the Austin EEOC Charge.

10. Austin received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

11. Austin has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Austin has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

13. On or about July 23, 2016, Austin began working for ConMet.

14. ConMet employed Austin as a general laborer.

15. Austin is 56 years old.

16. Plant Manager Jason Easter treated Austin unfavorably compared to younger employees.

17. Easter treated Austin unfavorably compared to older employees.

18. For example, Easter disciplined Austin more harshly than younger, male employees for the same or similar conduct.

19. For example, Easter gave Austin unfavorable assignments, compared to younger, male employees.

20. In or about 2018, Austin made a report of age and gender discrimination to Taryn Zukowski ("Report of Discrimination").

21. Zukowski was a representative of ConMet's human resources department.

22. ConMet has a policy against discrimination ("Discrimination Policy").

23. ConMet's Discrimination Policy precludes retaliation against employees who complain about discrimination.

24. Alternatively, retaliation against employees who complain about discrimination is permitted by ConMet.

25. ConMet's Discrimination Policy precludes intimidation against employees who complain about discrimination.

26. Alternatively, intimidation against employees who complain about discrimination is permitted by ConMet.

27. ConMet's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

28. ConMet's Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

29. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by ConMet.

30. ConMet's Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

31. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by ConMet.

32. ConMet has a policy to investigate reports of violations of its Discrimination Policy.

33. An investigation should include interviewing the complainant.

34. An investigation should include interviewing the subject of the complaint.

35. An investigation should include interviewing the subject of the reported discrimination.

36. An investigation should include interviewing witnesses to the reported discrimination.

37. An investigation should include getting a written statement from the complainant.

38. An investigation should include getting a written statement from the subject of the complaint.

39. An investigation should include getting a written statement from the subject of the reported discrimination.

40. In response to Austin's Report of Discrimination, ConMet did not interview Austin.

41. In response to Austin's Report of Discrimination, ConMet did not interview Easter.

42. In response to Austin's Report of Discrimination, ConMet did not interview witnesses.

43. In response to Austin's Report of Discrimination, ConMet did not get a written statement from Austin.

44. In response to Austin's Report of Discrimination, ConMet did not get a written statement from Easter.

45. In response to Austin's Report of Discrimination, ConMet did not get a written statement from witnesses.

46. ConMet did not investigate Austin's Report of Discrimination.

47. ConMet did not give Easter a verbal warning as a result of the Report of Discrimination.

48. ConMet did not give Easter a written warning as a result of the Report of Discrimination.

49. ConMet did not give Easter a final warning as a result of the Report of Discrimination.

50. ConMet did not give Easter a suspension as a result of the Report of Discrimination.

51. ConMet did not give Easter a demotion as a result of the Report of Discrimination.

52. ConMet did not terminate Easter's employment as a result of the Report of Discrimination.

53. ConMet did not discipline Easter at all as a result of the Report of Discrimination.

54. On or about May 4, 2020, Zukowski told Austin that she was being laid off due to the COVID-19 pandemic.

55. On or about May 4, 2020, Austin was 54 years old.

56. At all times herein, Austin was a member of a protected class on the basis of her age.

57. In or about May 2020, ConMet laid off 19 employees.

58. On or about May 4, 2020, Zukowski said that Austin would be eligible for unemployment and that she would be recalled to her position when ConMet returned employees to work.

59. In or about the summer of 2020, ConMet returned some of the laid-off employees to work.

60. In or about the summer of 2020, ConMet returned Jason Carrol to work.

61. Carrol was one of Austin's coworkers.

62. Carrol is male.

63. Carrol is under age 40.

64. Carrol had less experience at ConMet than Austin.

65. Carrol had less seniority at ConMet than Austin.

66. ConMet returned male employees to their positions.

67. ConMet returned younger employees to their positions.

68. In or about the summer of 2020, Austin called Jerry Morgan to request to return to work.

69. Morgan was a supervisor at ConMet.

70. In or about the summer of 2020, Morgan told Austin that she could not return to work.

71. In or about the summer of 2020, Morgan told Austin that she could not return to work because the only available work involved lifting heavy loads.

72. Austin is able to lift heavy loads.

73. Austin was qualified for the available position(s) at ConMet.

74. Being unable to lift heavy loads is a common stereotype about women.

75. Being unable to lift heavy loads is a common stereotype about people over age 40.

76. ConMet declined to rehire Austin because of her gender.

77. ConMet declined to rehire Austin because of her age.

78. ConMet declined to rehire Austin because of her Report of Discrimination.

79. ConMet has a progressive disciplinary policy ("Discipline Policy").

80. A verbal warning is the lowest level of discipline in the Discipline Policy.

81. Austin did not receive a verbal warning before the termination.

82. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

83. Austin did not receive a written warning before the termination.

84. A termination is the highest level of discipline in the Discipline Policy.

85. ConMet knowingly skipped progressive disciplinary steps in terminating Austin.

86. ConMet knowingly terminated Austin's employment.

87. ConMet knowingly took an adverse employment action against Austin.

88. ConMet knowingly took an adverse action against Austin.

89. ConMet intentionally skipped progressive disciplinary steps in terminating Austin.

90. ConMet intentionally terminated Austin's employment.

91. ConMet intentionally took an adverse employment action against Austin.

92. ConMet intentionally took an adverse action against Austin.

93. ConMet knew that skipping progressive disciplinary steps in terminating Austin would cause Austin harm, including economic harm.

94. ConMet knew that terminating Austin would cause Austin harm, including economic harm.

95. ConMet willfully skipped progressive disciplinary steps in terminating Austin.

96. ConMet willfully terminated Austin's employment.

97. ConMet willfully took an adverse employment action against Austin.

98. ConMet willfully took an adverse action against Austin.

99. On or about May 4, 2020, ConMet terminated Austin's employment because of her age.

100. On or about May 4, 2020, ConMet terminated Austin's employment because of her gender.

101. On or about May 4, 2020, ConMet terminated Austin's employment in retaliation for her opposing discrimination.

102. ConMet declined to rehire Austin because of her age.

103. ConMet declined to rehire Austin because of her gender.

104. ConMet declined to rehire Austin in retaliation for her opposing discrimination.

105. ConMet replaced Austin with a male employee.

106. ConMet replaced Austin with an employee under age 40.

107. As a direct and proximate result of ConMet's conduct, Austin suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF ADEA

108. Austin restates each and every prior paragraph of this complaint, as if it were fully restated herein.

109. Austin is 56 years old.

110. At all times relevant, Austin was a member of a statutorily-protected class under ADEA.

111. ConMet treated Austin differently from other similarly-situated employees based on her age.

112. At all times herein, Austin was fully qualified for her position and employment with ConMet.

113. Austin, at age 55, was a member of a statutorily-protected class under ADEA at the time she was terminated from her employment with ConMet.

114. On or about May 4, 2020, ConMet terminated Austin's employment.

115. In or about the summer of 2020, ConMet declined to rehire Austin.

116. After terminating Austin, ConMet replaced Austin with a person who was significantly younger and/or not belonging to the protected class under ADEA.

117. ConMet violated ADEA by discriminating against Austin based on her age.

118. As a direct and proximate result of ConMet's conduct, Austin suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

119. Austin restates each and every prior paragraph of this complaint, as if it were fully restated herein.

120. During Austin's employment, ConMet discriminated against her on the basis of gender.

121. ConMet terminated Austin's employment because of gender.

122. ConMet declined to rehire Austin because of gender.

123. ConMet violated Title VII by discriminating against Austin on the basis of gender.

124. As a direct and proximate result of ConMet's conduct, Austin suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF ADEA & TITLE VII

125. Austin restates each and every prior paragraph of this complaint, as if it were fully restated herein.

126. As a result of ConMet's discriminatory conduct described above, Austin complained about the discrimination she was experiencing.

127. Subsequent to Austin's reporting of discrimination, ConMet terminated Austin's employment.

128. ConMet's actions were retaliatory in nature based on Austin's opposition to the unlawful discriminatory conduct.

129. Pursuant to Title VII and ADEA, it is an unlawful discriminatory practice to retaliate against an employee for opposing discrimination.

130. As a direct and proximate result of ConMet's conduct, Austin suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Austin respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring ConMet to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring ConMet to restore Austin to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Austin for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Austin claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

                Respectfully submitted,

                */s/ Trisha Breedlove*_____
                Trisha Breedlove (0095852)
                Paul Filippelli (0097085)
                **THE SPITZ LAW FIRM, LLC**
                1103 Schrock Road, Suite 307
                Columbus, Ohio 43229
                Phone: (216) 291-4744
                Fax: (216) 291-5744
                Email: trisha.breedlove@spitzlawfirm.com
                Email: paul.filippelli@spitzlawfirm.com
                *Attorneys for Plaintiff Melissa Austin*

## JURY DEMAND

Plaintiff Austin demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)